# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **Z.J.,**<br>**Plaintiff,** | **Case No. 3:17-cv-00936** |
| **v.** | **Judge Crenshaw** |
| **THE VANDERBILT UNIVERSITY,**<br>**Defendant.** | **Magistrate Judge Holmes** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VANDERBILT UNIVERSITY'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Vanderbilt University ("Vanderbilt" or "the University") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Amended Complaint.

## INTRODUCTION

In March 2016, A.H., a female Vanderbilt student, visited the Vanderbilt University Medical Center ("VUMC") Emergency Department complaining of a sore neck and bruising to her breasts. When interviewed, A.H. reported that she had been assaulted by another Vanderbilt student, Z.J., after she declined to have sexual intercourse with him. Pursuant to Vanderbilt's Sexual Misconduct Policy and the U.S. Department of Education's Title IX guidance, the University's Equal Opportunity, Affirmative Action, and Disability Services office ("EAD") opened an investigation. Based on that investigation, EAD concluded that Z.J. engaged in non-consensual sexual contact, dating violence, and attempted non-consensual sexual intercourse with A.H. Vanderbilt's Office of Student Accountability, which is responsible for sanctioning

students under the Sexual Misconduct Policy, expelled Z.J. Z.J. appealed, and a panel of Appellate Officers upheld the decision and the sanction.

Z.J. alleges that Vanderbilt discriminated against him based on his sex and asserts that this Court should reverse Vanderbilt's findings and its decision to expel him. Z.J.'s Amended Complaint should be dismissed. It is devoid of plausible allegations that Vanderbilt discriminated against Z.J. on the basis of sex or that the University violated any of its policies or procedures. The Amended Complaint itself shows that Vanderbilt's investigation complied in all material respects with Vanderbilt's Sexual Misconduct Policy, through which the University meets its legal obligation to provide a safe, inclusive educational environment for all students, including by investigating and resolving sexual misconduct complaints. Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted and should be dismissed in its entirety.

## BACKGROUND

### A. Statutory, Regulatory, and Policy Background

Vanderbilt's response to A.H.'s complaint was guided by Title IX of the Education Amendments of 1972 ("Title IX"), the Department of Education's Title IX guidance, and Vanderbilt's Student Handbook, which contains its Sexual Misconduct Policy.

#### 1. Title IX

Title IX was intended to "supplement the Civil Rights Act of 1964's ban on [racial] discrimination in the workplace … and requires that educational institutions that receive federal funds provide a learning environment free of sex discrimination, including sexual harassment." *Bonnell v. Lorenzo*, 241 F.3d 800, 810 n.6 (6th Cir. 2001). The statute provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the

2

benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). A university's failure to prevent or remedy sexual harassment of a student, including sexual assault, may violate Title IX. *See Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999); *Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 258-259 (6th Cir. 2000); Ltr. from Russlynn Ali, Ass't Sec'y for Civil Rights, U.S. Dep't of Educ. at 1 (Apr. 4, 2011), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf ("Dear Colleague Ltr.") ("Sexual harassment of students, which includes acts of sexual violence, is a form of sex discrimination prohibited by Title IX.").

Title IX obligates schools to investigate and redress sexual misconduct involving students whether or not the conduct is prohibited by criminal law or a criminal investigation is underway. Dear Colleague Ltr. at 10 ("Conduct may constitute unlawful sexual harassment under Title IX even if the police do not have sufficient evidence of a criminal violation."). University Title IX investigations must be conducted pursuant to "grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited." 34 C.F.R. § 106.8(b). The Department of Education's Office for Civil Rights ("OCR") reviews schools' grievance procedures to ensure that they provide for "[a]dequate, reliable, and impartial investigation of complaints," "[d]esignated and reasonably prompt time frames for the major stages of the complaint process," and "[n]otice to parties of the outcome of the complaint." Dear Colleague Ltr. at 9. Title IX does not require schools to afford respondents the same procedural rights that apply to criminal defendants.

### 2. Vanderbilt's Sexual Misconduct Policy

At all times relevant to this case, Vanderbilt had in place policies and procedures providing for the prompt and equitable resolution of sexual misconduct complaints. Complaints

3

against students for sexual misconduct are handled in accordance with Chapter 7 of Vanderbilt's Student Handbook, titled "Sexual Misconduct and Intimate Partner Violence ("the Sexual Misconduct Policy" or "the Policy").[1]  The Policy is provided to all students and is accessible on Vanderbilt's website.  *See* Ex. A at 99-121.

The Policy prohibits, among other things, "Non-Consensual Sexual Contact," which includes "any contact of a sexual nature – however slight – with the breasts, buttocks, groin, genitals, mouth, or other body part of another, by any person upon another without effective consent."  Am. Compl. ¶ 49; Ex. A at 104.  It also prohibits "Dating Violence" ("sexual or physical abuse or the threat of such abuse committed by a person who is or has been in a social relationship of a romantic or intimate nature with the person against whom the violence is perpetrated") and attempted "Non-Consensual Sexual Intercourse" ("any vaginal and/or anal penetration – however slight – by a penis, object, tongue, or finger, and/or oral copulation (mouth to genital contact), by any person upon another without effective consent.").  Am. Compl. ¶ 49; Ex. A at 104.

The Policy establishes procedures for investigating reports of sexual misconduct.  Upon receipt, complaints are referred to EAD.  Ex. A at 110.  The Director of EAD, who is Vanderbilt's Title IX Coordinator, decides whether an investigation should be opened, taking into account "the wishes of the complainant, any previous allegations involving the respondent, the likelihood of repeated offenses, evidence that the alleged misconduct is part of a pattern of

---

[1] The 2015-2016 edition of the Student Handbook, attached as Exhibit A, is incorporated by reference in the Amended Complaint because it is "referred to in the pleadings" and its contents are "integral to the claims."  *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-336 (6th Cir. 2007).  Thus, the Handbook is "considered part of the pleadings" and may be considered without converting this motion to dismiss into a motion for summary judgment. *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997); *Commercial Money Ctr.*, 508 F.3d at 336.

4

misconduct, and the University's commitment to deter conduct that creates or contributes to a hostile environment." Am. Compl. ¶ 54; Ex. A at 111.

If EAD opens an investigation, EAD gives the respondent an opportunity to respond to the allegations, ask questions, provide information, and offer names of witnesses or other people with relevant information. Am. Compl. ¶ 56; Ex. A at 113. An EAD investigator will interview the respondent and witnesses who "may have pertinent knowledge." Ex. A at 113. Supporting information and documentation may be collected from the complainant, respondent, and witnesses. Am. Compl. ¶ 56; Ex. A at 113. EAD investigators permit the complainant and respondent to review and comment on their own interview summaries. Ex. A at 113.

EAD then prepares a preliminary investigative report, which summarizes the information and documents EAD considers relevant. Am. Compl. ¶ 59; Ex. A at 114. Both the complainant and respondent may submit written comments on the preliminary report. *Id.* After reviewing any such comments, EAD issues a final investigative report, which sets forth its determination whether, based on the preponderance of the evidence, the respondent engaged in prohibited sexual misconduct. Am. Compl. ¶ 59; Ex. A at 114. If EAD determines that the respondent violated the Sexual Misconduct Policy, it forwards the final investigative report to the Director of Student Accountability for sanctioning. Ex. A at 114.

Either the complainant or respondent may appeal EAD's determination as well as any sanction rendered by Student Accountability. Am. Compl. ¶ 62; Ex. A at 117. Appeals are decided by a panel of three trained Appellate Officers for Sexual Misconduct. Am. Compl. ¶ 62; Ex. A at 117. EAD, Student Accountability, and the non-petitioning party may all submit written comments, to which the petitioning party is given a chance to respond. Am. Compl.

5

¶ 62; Ex. A at 118-119.  After all comments and responses are received, the Appellate Officers decide the appeal by majority vote.  Am. Compl. ¶ 62; Ex. A at 119.

## B.  Vanderbilt's Receipt, Investigation, And Disposition Of Complaint Against Z.J.

In March 2016, A.H. visited the VUMC Emergency Department complaining of injuries to her neck and breasts.  Am. Compl. ¶ 63.[2]  A triage nurse referred A.H. to a social worker after hearing she had been physically assaulted; the social worker, in turn, spoke with VUPD about the reported assault.  Am. Compl. ¶ 64 n.48.  VUPD dispatched an officer to the Emergency Department to speak with A.H.  *See* Am. Compl. ¶ 64a.

The VUPD Incident Report reflects A.H.'s account of the events following a St. Patrick's Day tailgate on March 19, 2016.  A.H. told VUPD she left the tailgate with Z.J. and accompanied him to his dorm room, where they engaged in "consensual petting" but no "sexual penetration."  Am. Compl. ¶ 64a.  A.H. then declined to have sexual intercourse with Z.J., which made Z.J. so angry he "placed his hand at [A.H.'s] neck and shoved her to the ground."  Am. Compl. ¶ 64a, c.  After Z.J. grabbed her neck, A.H. began to have a panic attack and left his suite.  *Id.*.

The Incident Report also documents A.H.'s injuries, which included "obvious bilateral bruising to the breast tissue," a "hickey around A.H.'s sternum," "very light bruising on either

---

[2] The facts in this section are derived from the Amended Complaint, which liberally refers to, and quotes from, EAD's final investigative report.  Like the Student Handbook, EAD's final investigative report is part of the pleadings and may be considered without converting this Motion to Dismiss into a motion for summary judgment.  *See supra* note 1.  Courts in the Sixth Circuit regularly consider documents created during a university disciplinary process on motions to dismiss.  *See, e.g., Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 653 (S.D. Ohio 2016); *Doe v. Baum*, --- F. Supp. 3d ---, 2017 WL 57241 at *4 (E.D. Mich. Jan. 5, 2017).  To protect A.H.'s privacy, and to avoid any potential violation of the Family Education Rights and Privacy Act ("FERPA"), Vanderbilt has not attached the report to this motion, and primarily relies on the excerpts cited in the Amended Complaint.  Should the Court wish to review the report, which includes photographs of A.H.'s injuries, Vanderbilt will file a copy under seal for the Court's reference after notifying A.H. and giving her a chance to object, pursuant to FERPA.

side" of her neck, and "apparent pain to the anterior neck region." Am. Compl. ¶ 65. A.H.'s written statement to VUPD reported that Z.J. "forcibly groped" her and that "[w]hen I got mad [Z.J.] tried to choke me by grabbing my neck and cutting off my air." Am. Compl. ¶ 64f.

Z.J. was first interviewed by EAD on April 11. Am. Compl. ¶ 68. On April 13, EAD provided A.H. with a list of questions, to which she responded in writing the next day. Am. Compl. ¶ 69. A.H. also submitted a narrative summary on April 15. Am. Compl. ¶ 70. Z.J. participated in a second interview with EAD on April 20. Am. Compl. ¶ 71. EAD also obtained information about the incident from A.H.'s roommate. Am. Compl. ¶ 73.

EAD issued its preliminary investigative report on April 27 and its final investigative report on May 9. Am. Compl. ¶¶ 77-78. As set forth in the final investigative report, EAD "found that [Z.J.] engaged in contact of a sexual nature without effective consent, used physical force against A.H. during the encounter and attempted to engage in non-consensual sexual intercourse with A.H." Am. Compl. ¶¶ 78-79. EAD also found A.H. more credible than Z.J., in part because available security video and A.H.'s physical injuries corroborated her account. Am. Compl. ¶ 80-81.

Z.J. filed an appeal on May 18, 2016. Am. Compl. ¶¶ 84, 87. The Appellate Officers thereafter affirmed EAD's decision. Am. Compl. ¶ 90.

### STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a plaintiff's pleading. *Davis H. Elliot Co., Inc. v. Caribbean Util. Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir. 1975). The complaint is construed in the light most favorable to the plaintiff, accepting all factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007). The court, however, "need not accept as true legal conclusions or

unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Nor is the court required to accept as true allegations that are contradicted by documents that have been incorporated by reference in the complaint. *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012). The pleading "standard is met where the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

Z.J. asserts ten federal and state law claims based on Vanderbilt's decision to expel him for violating its Sexual Misconduct Policy.[3] None of Z.J.'s claims provides a basis for this Court to second guess Vanderbilt's disciplinary determination.

Z.J.'s Title IX claims (Count III and the first Count V, Am. Compl. ¶¶ 133-143, 154-158) fail to plausibly plead discrimination on the basis of sex. Z.J.'s contractual and quasi-contractual claims (Counts I, II, and X, Am. Compl. ¶¶ 96-132, 173-175) fail to identify a contractual or quasi-contractual obligation that Vanderbilt violated. And Z.J. fails to establish the essential elements of his various state-law tort claims (Count IV, the second Count V, and Counts VI-IX, Am. Compl. ¶¶ 144-153, 159-172). The Amended Complaint should therefore be dismissed in its entirety.

---

[3] Some of Z.J.'s claims are misnumbered and mislabeled. There are two counts labeled Count V, and no Count VIII. Count III does not involve any allegations related to the Clery Act; the second Count V addresses only negligence, not negligence *per se*; and Count VI addresses negligence *per se*, not just the Clery Act.

8

# I.    Z.J. Fails To State A Claim For Violation Of Title IX

Z.J. alleges that Vanderbilt violated Title IX because its bias against him on the basis of sex led to an "erroneous outcome." Am. Compl. ¶ 138.a. As set forth below, Z.J.'s Title IX claims fail because he does not plausibly allege that he was discriminated against on the basis of his sex, and he seeks relief that cannot be granted.

## A.    Z.J. Fails To Plausibly Allege That He Was Discriminated Against On The Basis Of Sex

To plead a cognizable claim of sex discrimination under Title IX, a plaintiff must "specifically allege the … circumstances giving rise to a plausible inference of … discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994). Disparate impact does not suffice; the plaintiff must plausibly allege that the complained-of conduct was undertaken "at least in part because of, not merely in spite of, its adverse effects upon" his sex. *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (internal quotation marks omitted); *see also Mallory v. Ohio Univ.*, 76 F. App'x 634, 638 (6th Cir. 2003) (the plaintiff must "demonstrate that the conduct of the university in question was motivated by a sexual bias").

Z.J. has failed to meet his pleading burden because his sex discrimination allegations are entirely conclusory. *See, e.g.*, Am. Compl. ¶ 139 ("Defendant Vanderbilt made the decision to charge and expel the Plaintiff based off of a sexual bias."); Am. Compl. ¶ 142 ("Based on the aforementioned, Defendant Vanderbilt imposed a disciplinary sanction of expulsion against the Plaintiff due to his gender."). As *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), teaches, legal conclusions "are not entitled to the assumption of truth" and "must be supported by factual allegations." *Id.* at 679. Accordingly, a plaintiff challenging a university's disciplinary process under Title IX must allege some facts that "'tend to show the influence of gender,'" such as

"'statements by members of the disciplinary tribunal [or] statements by pertinent university officials'" or discriminatory "'patterns of decision-making.'" *Doe v. Case W. Reserve Univ.*, 2015 WL 5522001, at *6 (N.D. Ohio Sept. 16, 2015) (quoting *Yusuf*, 35 F.3d at 715). Z.J.'s complaint contains no such factual allegations. Nor does Z.J. attempt to prove a "pattern of decision-making." *See Mallory*, 76 F. App'x at 640 ("[O]ne case by an individual who was subjectively dissatisfied with a result does not constitute a 'pattern of decision-making.'").

Z.J. alleges that Vanderbilt's process was stacked against him on the basis of his sex: "Vanderbilt conducted its investigation of A.H.'s allegations in a manner that was biased against the male being accused," and "Plaintiff was guilty until proven innocent, effectively denying him due process by having to prove his innocence when the female's statement is accepted at face value." Am. Compl. ¶ 141. Even if these conclusory allegations met the pleading standard required by *Iqbal* – which they do not – they would show, at most, that Vanderbilt's process for investigating and resolving sexual misconduct complaints favors victims of sexual assault. But a victim-centric investigatory and disciplinary process does not violate Title IX. *E.g.*, *Doe v. Coll. of Wooster*, 2017 WL 1038982, at *5 (N.D. Ohio Mar. 17, 2017) ("'Demonstrating that a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students.'"); *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 607 (S.D. Ohio 2016) ("[B]ias[] in favor of alleged victims of sexual assault and against students accused of sexual assault … is not the same as gender bias because sexual assault victims can be either male or female."), *aff'd sub nom. Doe v. Cummins*, 662 F. App'x 437 (6th Cir. 2016). Notably, Z.J. does not allege that Vanderbilt's process would have operated any differently if a female student had been accused of sexually assaulting a male student. *See Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 779 (S.D. Ohio 2015)

10

(granting motion to dismiss where plaintiff failed to assert any "facts to suggest that [the investigator] would have treated a female accused of sexual assault any differently in her investigation or that the University would have acted differently in a disciplinary procedure against a female accused of sexual assault.").

Z.J. also alleges (in his breach of contract count) that Vanderbilt failed to provide an "unbiased and independent panel" because it "has been under the spotlight for quite some time regarding sexual misconduct" and because there is "pressure that comes along with maintaining the University's image." Am. Compl. ¶ 119. Again, these conclusory allegations provide no basis to infer bias *on the basis of sex* in Vanderbilt's disciplinary process. *See Marshall v. Ohio Univ.*, 2015 WL 7254213, at *8 (S.D. Ohio Nov. 17, 2015) (allegation that university "succumbed to pressure from the Department of Education to 'crackdown' on perpetrators of sexual assault and sexual misconduct on university campuses" failed to state a plausible claim of discrimination). Z.J. does not explain how public scrutiny of Vanderbilt's handling of sexual misconduct cases would lead to discrimination against male students. *See, e.g.*, *Sahm*, 110 F. Supp. 3d at 780 (negative media attention does not establish sex-based bias). Indeed, Z.J.'s allegations about public scrutiny of Vanderbilt are so vague and general that they fail to even support an inference that Vanderbilt's process is biased in favor of victims of sexual misconduct.

Counts III and V must therefore be dismissed for failure to plead a violation of Title IX.

### B. Z.J. Is Not Entitled To The Relief He Requests

Count III also fails because the requested relief cannot be granted. Z.J. seeks an order requiring Vanderbilt to (1) "reverse[] its outcome and findings," (2) "expunge[]" Z.J.'s disciplinary record, (3) "remove[]" Z.J.'s record of expulsion, and (4) "permanently destroy[]" the record of Z.J.'s EAD hearing and appeal. Am. Compl. ¶ 143. This relief is not declaratory in

nature; rather Z.J. seeks an order directing Vanderbilt to take specific actions. *See AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004) ("The 'useful purpose' served by the declaratory judgment action is the clarification of legal duties for the future, rather than [redressing] past harm.").

Z.J. would not be entitled to the requested relief even if it could be characterized as declaratory. Title IX does not mandate specific outcomes; it requires only that educational institutions adopt "'nondiscriminatory policies and procedures.'" Am. Compl. ¶ 33 (emphasis and alteration omitted). A court may order a university to conduct its Title IX process in a nondiscriminatory manner, but it is not the court's role to adjudicate the sexual misconduct complaint itself. *See, e.g.*, *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 755 (E.D. Tenn. 2009) ("'[T]he law does not allow this Court to retry the University's disciplinary proceeding.'"); *Furey v. Temple Univ.*, 884 F. Supp. 2d 223, 261 (E.D. Pa. 2012) (ordering university to provide plaintiff a new hearing comporting with due process, but making no findings regarding the merits of the underlying complaint itself); *cf. Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1155 (10th Cir. 2006) ("'[V]ictims do not have a right to seek particular remedial demands.'"); *Cissell Mfg. Co. v. U.S. Dep't of Labor*, 101 F.3d 1132, 1136 (6th Cir. 1996) ("It is well settled that when an agency makes an error of law in its administrative proceedings, a reviewing court should remand the case to the agency so that the agency may take further action consistent with the correct legal standards.").

## II. Z.J. Fails To State A Claim For Breach Of Contract, Promissory Estoppel, Or Unjust Enrichment

The Amended Complaint (Count I) also claims that Vanderbilt violated an express or implied contract with Z.J. in its processing and disposition of A.H.'s sexual assault allegations.

12

Z.J. asserts that Vanderbilt's Sexual Misconduct Policy, which sets forth the procedures for EAD to follow in sexual misconduct investigations, constitutes an express or implied contract. The Policy outlines the procedural protections afforded to the parties in sexual misconduct investigations, but it does not promise respondents the procedural rights afforded criminal defendants: "'disciplinary hearings against students … are not criminal trials,'" and "full-scale adversarial proceeding[s] [are] not required." *Doe v. Cummins*, 662 F. App'x 437, 446 (6th Cir. 2016) (quoting *Flaim v. Medical Coll. of Ohio*, 418 F.3d 629, 635, 640 (6th Cir. 2005)). The facts alleged in Z.J.'s complaint and reflected in the documents incorporated in it by reference make plain that Z.J. has not identified a single respect in which Vanderbilt's handling of his case materially violated its obligations under the Policy.

### A.  Z.J. Has Identified No Breach Of Any Enforceable Contract

As a general matter, Tennessee "courts have rejected a rigid application of contract law" to the university-student relationship. *Doherty v. S. Coll. Of Optometry*, 862 F.2d 570, 577 (6th Cir. 1988). Although neither the Student Handbook nor the Sexual Misconduct Policy creates binding contractual obligations, *see Lord v. Meharry Med. Coll. Sch. of Dentistry*, 2005 WL 1950119 at *5 (Tenn. Ct. App. Aug. 12, 2005) ("Taken together, the Policies, ADA Standards, and Handbook do not constitute actionable representations by Meharry."); *Ku v. State*, 104 S.W.3d 870, 876 (Tenn. Ct. App. 2002) ("the College's Handbook does not constitute a written contract"), Vanderbilt assumes *arguendo* in response to the Motion that the Handbook creates an implied contract under Tennessee law, *see Atria v. Vanderbilt Univ.*, 142 F. App'x 246, 255 (6th

13

Cir. 2005) (describing Tennessee law as requiring enforcement of Vanderbilt's Student Handbook as an "implied contract").[4]

Count I's lengthy breach of contract claim boils down to two sets of contentions: (1) that Vanderbilt breached its obligation to provide certain procedures during its investigation, and (2) that the outcome was not supported by a preponderance of the evidence. Even if the Sexual Misconduct Policy were an enforceable contract, both parts of the claim would fail.

### 1. Z.J. Asserts A Right To Process Not Required By Vanderbilt's Sexual Misconduct Policy

Z.J. was afforded all the process the Sexual Misconduct Policy offers. The specific procedural protections Z.J. claims he did not receive are neither afforded by the Policy nor required by federal law.[5]

*First*, Z.J. had the opportunity to review and challenge the evidence against him, in accordance with the Sexual Misconduct Policy. The preliminary investigative report summarized the evidence on which EAD relied, and Z.J. was permitted to review the report and submit written comments addressing the evidence. Ex. A at 114. Z.J. did not do so. Yet he now challenges EAD's determination on the ground that he was not provided additional opportunities to review the evidence against him, such as the right to review "any questions asked to A.H. and

---

[4] Z.J. alleges that "Defendant Vanderbilt offered Plaintiff the ability to enroll in the university upon the condition that the Plaintiff paid for the necessary tuition and fees." Am. Compl. ¶ 98. But the alleged enrollment contract *does not bear on the procedural or substantive aspects of* Vanderbilt's decision to expel Z.J.

[5] Z.J.'s procedural claims are as follows: (1) Breach of Obligation to Conduct an Appropriate Investigation (Am. Compl. ¶¶ 102-103); (2) Breach of Obligation to Provide Written Statements of All Witnesses (Am. Compl. ¶¶ 109-111); (3) Breach of Promise that All Persons with Relevant Information Will Be Permitted to Provide Testimony (Am. Compl. ¶¶ 112-115); (4) Breach of Obligation to Disclose Exculpatory Evidence (Am. Compl. ¶¶ 116-117); (5) Breach of Obligation to Provide an Unbiased and Independent Disciplinary Panel and Investigation (Am. Compl. ¶¶ 118-119); and (6) Breach of Obligation to Afford Opportunity for Confrontation and Cross-Examination (Am. Compl. ¶¶ 123-126).

14

statements provided by A.H.," Am. Compl. ¶ 109, the right to see any potentially exculpatory evidence EAD obtained, Am. Compl. ¶ 116, and the opportunity to confront or cross-examine A.H., Am. Compl. ¶¶ 123-126.

The Sexual Misconduct Policy does not provide for any of those procedures. It does not entitle a respondent to review all comments made by a complainant during the investigative process. Rather, it provides only that comments received in response to the preliminary investigative report will be attached to the final investigative report. Ex. A at 114.[6] Nor does the Policy promise a respondent access to exculpatory evidence uncovered during an investigation. In the absence of an explicit provision in the Policy, there is no "*Brady*-like duty to disclose any potentially exculpatory evidence to the Respondent in a private postsecondary education disciplinary hearing context." *Doe v. Univ. of the South*, 2011 WL 1258104 at *17 (E.D. Tenn. Mar. 31, 2011). Similarly, Vanderbilt never promised to give Z.J. the opportunity to confront or cross-examine witnesses. Under the Policy, EAD's determination of responsibility is made

---

[6] Although A.H.'s comments on the preliminary investigative report were not attached to the final investigative report as an exhibit, that did not harm Z.J. in any way. EAD summarized A.H.'s comments in the report, as noted in the Amended Complaint. *See* Am. Compl. ¶ 74a. Further, under the Sexual Misconduct Policy, Z.J. was not entitled to review those comments until after EAD reached its determination and the report was finalized; the fact that the comments were not attached to the final report thus did not affect Z.J.'s ability to participate fully in EAD's investigation. *Cf. Doe v. Coll. of Wooster*, 2017 WL 1038982 at *8 (N.D. Ohio, Mar. 17, 2017) (technical violation of Student Handbook that did not affect the disciplinary process was not a material breach). Furthermore, Z.J. has not alleged that he brought the fact that the comments were not attached to the final investigative report to the attention of anyone at EAD who could have done something about it; he has therefore waived the ability to raise the issue now. *See Chattanooga-Hamilton Cty. Hosp. Auth. v. UnitedHealthCare Plan of River Valley, Inc.*, 475 S.W.3d 746, 757 (Tenn. 2015) (parties are generally required to exhaust administrative procedures before seeking judicial intervention, in part to "afford the parties and the courts the benefit of [the administrative tribunal's] experience and expertise without the threat of litigious interruption"); *see also Satterfield v. Edenton-Chowan Bd. of Ed.*, 530 F.2d 567, 575 n.22 (4th Cir. 1975) (plaintiff "may not sit idly by and tacitly consent to an improper hearing in order to assert a cause of action at a later time").

15

without a hearing, which obviously precludes cross-examination of witnesses. And Vanderbilt is no outlier in this regard: OCR "strongly discourages schools from allowing the parties personally to question or cross-examine each other …." Dear Colleague Ltr. at 12.[7]

*Second*, Z.J. was permitted to offer evidence supporting his version of events in two interviews with EAD. Am. Compl. ¶¶ 68, 71. While Z.J. alleges that he provided EAD with the names of potential witnesses and that EAD never interviewed those witnesses, Am. Compl. ¶ 113, the Policy provides for the investigator to interview only such witnesses who "may have pertinent knowledge," clearly a matter within the investigators' discretion. Ex. A at 113. EAD investigators also have discretion in collecting "supporting documentation and information"; the Policy provides only that they "may" do so, not that they "shall," "will," or "must." Am. Compl. ¶¶ 112-113; Ex. A at 113. Z.J. therefore had no specific "right to provide witnesses that interacted with [him] after the alleged incident" or "any witnesses that could comment on [his] character and capability of committing such acts." Am. Compl. ¶ 112; *see Doe v. Brown Univ.*, 210 F. Supp. 3d 310, 340 n.17 (D. R.I. 2016) ("an investigator must retain the discretion to make judgment calls about relevance"); *Tsuruta v. Augustana Univ.*, 2015 WL 5838602 at *7 (D. S. Dak. Oct. 7, 2015) (decision not to exercise discretion granted in school policy does not constitute a breach of that policy).

*Third*, the Amended Complaint identifies no way in which EAD's investigation violated the Sexual Misconduct Policy. *Cf.* Am. Compl. ¶¶ 102-103. Z.J. bases his argument that Vanderbilt lacked sufficient basis to open an investigation on cherry-picked statements in the

---

[7] Cross-examination and confrontation are discouraged in sexual assault hearings because permitting an alleged perpetrator to cross-examine a complainant may be traumatic for the complainant and may discourage other alleged victims from coming forward or seeking assistance. Dear Colleague Ltr. at 12.

VUPD Incident Report. *Id.* The Incident Report contained information that provided more than enough reason for EAD to initiate an investigation, including A.H.'s statement that Z.J. "became angry and placed his hand at her neck and shoved her to the ground," the "obvious bilateral bruising to the breast tissue," and A.H.'s "apparent pain to the anterior neck region." Am. Compl. ¶¶ 64a, 65. Furthermore, Z.J. has provided no basis for this Court to conclude that EAD's decision to open an investigation was based on anything other than the factors listed in the Policy: "the interests of the complainant[,] … any previous allegations involving the respondent, the likelihood of repeated offenses, evidence that the alleged misconduct is part of a pattern of misconduct, and the University's ability to ensure that the alleged misconduct does not contribute to the creation of a hostile environment for any students." Ex. A at 111. *Cf. Coll. of Wooster*, 2017 WL 1038982 at *9-*10 (conclusory allegations that University failed to conduct full and fair investigation insufficient).

*Finally*, Z.J. has alleged no facts supporting his contention that Vanderbilt failed to provide an unbiased decisionmaker to decide his case. *Cf.* Am. Compl. ¶¶ 118-119. He contends only that the manner in which EAD and the Appellate Officers weighed the evidence demonstrates that "the EAD and Appellate [Officers] conducted their investigation and review with a bias, and discriminated against the Plaintiff's statements based on his gender." Am. Compl. ¶ 118. As discussed above, Z.J. has failed to plead any facts from which this Court could reasonably infer that Vanderbilt engaged in gender-based discrimination. *See supra* at 9-11. Nor has Z.J. plausibly pled facts supporting a finding that any other type of bias infected Vanderbilt's handling of the complaint against him. In the university setting, "a disciplinary committee is entitled to a presumption of honesty and integrity, absent a showing of actual bias." *Atria v. Vanderbilt Univ.*, 142 F. App'x 246, 256 (6th Cir. 2005). Given this presumption, "'any alleged

17

prejudice on the part of the descisionmaker must be evident from the record and cannot be based in speculation or inference.'" *Cummins*, 662 F. App'x at 450 (quoting *Nash v. Auburn Univ.*, 812 F.2d 655, 665 (11th Cir. 1987)).

Z.J.'s only purported evidence of bias on the part of EAD and the Appellate Officers is the fact that they considered evidence and statements A.H. provided for the first time more than a month after the incident. Am. Compl. ¶ 118. Z.J. alleges that EAD treated him unequally because it identified inconsistencies in his various accounts of the encounter and relied in part on those inconsistencies in finding A.H. more credible. *Id.* But Z.J.'s argument misses the point: A.H's later statements elaborated on her earlier statements but did not directly contradict them. *Cf. Cummins*, 662 F. App'x at 453-454; *see* Am. Compl. ¶¶ 72-75. Although the Court must draw reasonable inferences in the plaintiff's favor, it "need not indulge in unreasonable inferences." *Cummins*, 662 F. App'x at 454; *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) ("we need not accept as true legal conclusions or unwarranted factual inferences"). Absent such an "unreasonable" and "unwarranted" inference, these barren facts cannot demonstrate bias.

### 2. Z.J. Has Not Plausibly Alleged That The Outcome Of Vanderbilt's Investigation Was Based On Factors Other Than The Evidence

Z.J. additionally claims that Vanderbilt's investigation and determination were substantively deficient: in his telling, EAD erred in finding that he violated the Sexual Misconduct Policy.[8] By arguing that the University "reached the wrong result," Z.J. effectively asks this Court to determine whether EAD properly applied the applicable standard. *Anderson v. Vanderbilt Univ.*, 450 F. App'x 500, 502 (6th Cir. 2011). But "'the law does not allow this Court

---

[8] Z.J.'s "substantive" breach-of-contract theories are as follows: Breach of Obligation to Refrain from Proceeding if Charge Lacks Sufficient Evidence (Am. Compl. ¶¶ 104-108) and Breach of Obligation that There Be Sufficient Evidence to Support the Board's Finding (Am. Compl. ¶¶ 120-122).

18

to retry the University's disciplinary proceeding.'" *Univ. of the South*, 687 F. Supp. 2d at 755 (quoting *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 14 (D. Maine 2005)); *Anderson*, 450 F. App'x at 502 ("Absent any allegation that the [disciplinary body] failed to comply with the relevant procedural requirements, we decline to construe the Student Handbook as requiring a particular outcome.").

None of the plausible allegations in the Amended Complaint support an inference that EAD's determination was based on anything other than the evidence before it. Moreover, EAD's finding that A.H. was more credible than Z.J. fell "well within the discretion of the disciplinary board, and is not for the courts to second guess." *Coll. Of Wooster*, 2017 WL 1038982 at *11. And, in any event, EAD's credibility determination was supported by physical and video evidence, including the VUPD's report of A.H.'s injuries and campus security video that confirmed her estimates of the time she spent in Z.J.'s room. That Z.J. has identified some conflicting evidence in the record does not mean that Vanderbilt's decision was incorrect. *See Doe v. Trs. of Boston Coll.*, 2016 WL 5799297 at *18 (D. Mass. Oct. 4, 2016).

### 3. Z.J. Has Identified No Violation Of The Implied Covenant Of Good Faith And Fair Dealing

Z.J. also claims that Vanderbilt's conduct violated the implied covenant of good faith and fair dealing. Because Z.J. has identified no way in which Vanderbilt's investigation and adjudication of A.H's claims violated the Sexual Misconduct Policy—the only relevant alleged agreement between the parties—this argument has no merit. *See Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 687 (Tenn. 1996) ("Performance of a contract according to its terms cannot be characterized as bad faith"). District courts in this circuit and elsewhere have dismissed similar good faith and fair dealing claims where the disciplined plaintiff identified no

19

way in which the university defendant violated applicable policies. *Coll. of Wooster*, 2017 WL 1038982 at \*12 (dismissing good faith and fair dealing claim under Ohio law); *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 482 (S.D.N.Y. 2015) (same, applying New York law).

## B.      Z.J.'s Quasi-Contract Claims Are Insufficient

Counts II and X sound in promissory estoppel and unjust enrichment, *i.e.*, that Vanderbilt should be bound by Z.J.'s expectation that it would abide by the policies set forth in its Student Handbook and that Vanderbilt was unjustly enriched because it expelled Z.J. after accepting his tuition.  Both claims fail as a matter of law because Z.J. does not allege that Vanderbilt promised him anything other than to follow the procedures set forth in the Sexual Misconduct Policy and has identified no way in which Vanderbilt's actions violated the Policy.  Nor has he identified an additional promise, beyond those located in the Policy, that Vanderbilt failed to honor.  *See Thomas Energy Corp. v. Caterpillar Fin. Servs. Corp.*, 2014 WL 7366676 at \*7 (Tenn. Ct. App. Dec. 26, 2014) (promissory estoppel no substitute for a breach of contract claim unless the plaintiff identifies an extracontractual agreement that expands the terms of the contract between the parties); *Overstreet v. TRW Commercial Steering Div.*, 256 S.W.3d 626, 632 (Tenn. 2008) (court will only find a "contract implied in law" of the kind needed to support unjust enrichment claim "in the absence of an actual contract or contract implied in fact.").  The only relevan obligations Z.J. has identified between the parties are contained in the Policy itself, which Z.J. has not plausibly alleged Vanderbilt violated.  *See supra* at 14-19.  Z.J. has identified no additional source of substantive or procedural rights that would call into question Vanderbilt's handling of A.H.'s complaint.

## III.   Z.J. Fails To State A Claim For Negligence, Negligence *Per Se*, Or Gross Negligence

### A.   Vanderbilt Owes No Non-Contractual Duty Of Care To Z.J

Z.J. fails to state a claim for negligence because any "duty of care" owed by Vanderbilt to Z.J. arises solely out of the parties' contractual relationship. As explained in Section II.A, *supra*, Vanderbilt concedes for the purposes of this Motion that Z.J. does have a relationship with the university that is "contractual in nature." *Doherty*, 862 F.2d at 577. Where a duty of care arises entirely by contract, there is no basis for tort liability. *Calipari v. Powertel, Inc*., 231 F. Supp. 2d 734, 736 (W.D. Tenn. 2002) ("A tort exists only if a party breaches a duty which he owes to another independently of the contract."); *see also Valente v. Univ. of Dayton*, 438 F. App'x 381, 387 (6th Cir. 2011) (dismissing claim that university negligently breached its duty of care to student in conducting disciplinary hearing because duties to student arose from his contract with the university) (applying Ohio law). Accordingly, Z.J.'s negligence and gross negligence claims must be dismissed.

### B.   Because There Is No Private Cause Of Action Under The Clery Act, There Is No Liability For Negligence *Per Se*

To the extent Z.J. seeks to impose negligence *per se* liability based on an alleged violation of the Clery Act, his claim is preempted. By its express terms, the Clery Act does not "create a cause of action against any institution of higher education" or "establish any standard of care." 20 U.S.C. § 1092(f)(14)(A)(i), (ii); *see also Souders v. Mount St. Joseph Univ*., 2016 WL 8671966, at *7 (S.D. Ohio Mar. 11, 2016) (collecting cases regarding lack of private cause of action under the Clery Act). Where a federal statute does not provide for a private cause of action, plaintiffs cannot circumvent the statute by characterizing their claims as state-law negligence *per se* claims. *See Kemp v. Medtronic, Inc*., 231 F.3d 216, 236 (6th Cir. 2000). This

21

is particularly true where, as here, the Clery Act expressly provides not only that it does not create a cause of action, but also that it does not establish a standard of care. 20 U.S.C. § 1092(f)(14)(A)(ii). Z.J.'s claim (¶ 164) that "the Clery Act created a statutory duty of care" is directly contradicted by the statute, and permitting Z.J.'s negligence *per se* claim to go forward would be contrary to Congress's intent.

      **C.    Because Z.J.'s Title IX Claims Fail, There Is No Negligence *Per Se* Liability**

Z.J.'s negligence *per se* claim also fails to the extent he seeks to impose liability based on Vanderbilt's purported violation of Title IX. Because Z.J. has failed to plausibly allege sex-based discrimination (see *supra* 9-11), Z.J. cannot show that Vanderbilt violated Title IX. That ends the analysis. Negligence *per se* liability cannot be broader in scope than the private cause of action implied by Title IX. While the Department of Education may administratively enforce a broad range of Title IX requirements, *see Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998), a private right of action is only authorized when there is actual discrimination. Accordingly, because the circumstances here do not give rise to a private cause of action, there can be no negligence *per se* liability. *Univ. of the South*, 2011 WL 1258104, at *14; *accord Ross v. Univ. of Tulsa*, 2015 WL 4064754, at *4 (N.D. Okla. July 2, 2015).

**IV.    Z.J.'s Remaining State-Law Tort Claims Also Fail**

      **A.    Z.J. Has Not Identified "Outrageous" Conduct, As Required To Support An Intentional Infliction of Emotional Distress Claim**

Tennessee law sets a high standard for intentional infliction of emotional distress claims: A plaintiff must "show that the defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Lourcey v. Estate of Scarlett*, 146

S.W.3d 48, 51 (Tenn. 2004). Z.J. has alleged no action by Vanderbilt that could be considered "outrageous," "extreme," "atrocious," or "utterly intolerable." As described in the Amended Complaint, Vanderbilt responded to A.H.'s complaint by conducting an investigation, reviewing relevant evidence, and reaching the conclusion that Z.J. violated the Sexual Misconduct Policy. None of these actions is "utterly intolerable in a civilized community"; indeed, they reflect Vanderbilt's execution of a policy developed to comply with federal law and create a safe, inclusive, and nondiscriminatory environment for all students.

Similar policies and processes exist at universities across the country, and courts have found that application of the policies to resolve sexual misconduct complaints does not constitute intentional infliction of emotional distress. *See, e.g. Austin v. Univ. of Oregon*, 205 F. Supp. 3d 1214 (D. Ore. 2016); *Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184 (W.D.N.Y. 2013). "A College's decision, when confronted with a female student's accusation of rape, to confront the male student with the charges, hold a hearing, and support the findings of the initial tribunal on appeal, even where various procedural errors are alleged," cannot support a claim for intentional infliction of emotional distress. *Fellheimer v. Middlebury Coll.*, 869 F. Supp. 238, 247 (D. Vt. 1994) (dismissing disciplined student's claim for intentional infliction of emotional distress). This is so even where a complaint alleges some irregularities in the process. *See Univ. of the South*, 2011 WL 1258104, at *16 (no valid emotional-distress claim where plaintiff alleged university hid exculpatory evidence and improperly weighed evidence concerning complainant's use of psychotropic medications); *Doe v. Coll. of Wooster*, 2017 WL 1038982, at *13 (N.D. Ohio Mar. 17, 2017) (dismissing emotional distress claim because college "took the action it did against plaintiff in response to a claim of sexual assault lodged by another student."). Count IX therefore must be dismissed.

23

**B.**     **The Amended Complaint Does Not Allege "Publication," An Essential Element Of A Claim For Defamation Under Tennessee Law**

Z.J.'s claim for defamation also fails because he has not alleged publication, an essential element of a defamation claim. *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571-572 (Tenn. 1999). Under Tennessee law, a defamation plaintiff must demonstrate that the allegedly defamatory material was communicated to a third party. *Id.* The Amended Complaint gestures toward this requirement in its statement that "defamatory statements were published to multiple third parties via the Vanderbilt warning system and to the Director of Student Accountability." Am. Compl. ¶ 151. It does not, however, explain what it means by the "Vanderbilt warning system" or how use of that system constitutes publication. Nor does it plead "the time and place of the utterance" as required to apprise Vanderbilt "of the allegations that [it] must defend against. *Handley v.* May, 588 S.W. 2d 772, 775 (Tenn. Ct. App. 1979); *see also Rose v. Cookeville Reg'l Med. Ctr.*, 2008 WL 2078056 (Tenn. Ct. App. May 14, 2008). Furthermore, as an employee of the University, the Director of Student Accountability is not a "third party" under Tennessee law. *See Siegfried v. Grand Krewe of Sphinx*, 2003 WL 22888908, at *2-3 (Tenn. Ct. App. Dec. 2, 2003) (no publication where information was disseminated only between members of an organizational defendant); *Freeman v. Dayton Scale Co.*, 19 S.W.2d 255, 258 (1929) (co-employee in corporation "has no distinct third party entity" status).

## CONCLUSION

For the reasons stated above, Z.J.'s Amended Complaint should be dismissed.

Dated this 19th day of June, 2017.

Respectfully submitted,


By: s/ Tim K. Garrett
Tim K. Garrett (BPR# 012083)
Bass, Berry & Sims PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
(615) 742-6270 (phone)
(615) 742-2770 (fax)
tgarrett@bassberry.com

Bruce M. Berman (*pro hac* motion pending)
Danielle Conley (*pro hac* motion pending)
WILMER CUTLER PICKERING HALE AND
DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000 (phone)
(202) 663-6363 (fax)
bruce.berman@wilmerhale.com
danielle.conley@wilmerhale.com

Sheree C. Wright (BPR# 011195)
Senior Associate General Counsel
Office of the General Counsel
Vanderbilt University
2100 West End Avenue, Suite 759
Nashville, TN 37203
sheree.wright@vanderbilt.edu

*Attorneys for The Vanderbilt University*

25

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of June, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operations of the Court's electronic filing system to:

Rob McKinney
One Washington Square, Suite 400
214 Second Avenue North
Nashville, TN 37201
rob@maymckinneylaw.com


s/ Tim K. Garrett
Tim K. Garrett